## J. H. HALLIBURTON v. W. E. ELDER, et al.

Western Section. April 14, 1927.

No petition for Certiorari was filed.

1. **Liens.** Landlord's lien statute of State of Arkansas held not to have extra territorial effect.
   In an action to recover certain cotton which was claimed under a landlord's lien statute of the State of Arkansas where the evidence showed that the cotton had been delivered to one of the defendants in Tennessee, held that the Arkansas statute does not have extra territorial effect and when the cotton was delivered to the defendant in the State of Tennessee, the Arkansas landlord's lien created by the statutes of that State was lost.

2. **Fraud.** An agreement to furnish money and supplies to a party to raise cotton on rented land and the taking of a chattel mortgage thereon of itself is not a fraud against the landlord's rights which will entitle the landlord to relief after the cotton has been removed from the State.
   In an action by a landlord for certain cotton, claiming the same under a landlord's lien where it was shown that one of the defendants had furnished supplies to the other to raise the cotton on rented land and had taken a chattel mortgage on the cotton, held that this act alone was not an act of fraud against the landlord.

3. **Landlord and tenant.** Where a tenant delivered cotton on which the landlord had a lien for rent to another in another State the landlord's lien is destroyed.
   In an action to recover certain cotton where the evidence showed that the cotton was grown on rented land in the State of Arkansas where by statute the landlord had a lien on the crops grown for his rent and that the tenant delivered the cotton to another in the State of Tennessee, held that the lien was destroyed when the cotton was taken out of the State of Arkansas.

Appeal from Chancery Court, Shelby County; Hon. D. W. De-Haven, Chancellor.

Affirmed.

Bryan & Brode, of Memphis, for appellant.

L. C. Going and M. C. Ketchum, of Memphis, for appellee.

SENTER, J. The original bill was filed in this cause by complainants to recover of defendant W. E. Elder on a rent note and contract for the rent of farm land for the year 1923, and also to attach by garnishment the proceeds realized from the sale of fifteen bales of cotton sold by K. R. Armistead, operating under the firm name and style of K. R. Armistead and Co., a cotton factor in Memphis. The original bill alleged that complainant Halliburton had a landlord's lien on the cotton in question, and was entitled to have the proceeds from the sale of this cotton applied to his rent note.

The defendant W. E. Elder filed a separate answer, admitting the execution of the rent note and contract, but alleged in the answer that the acreage and quality of the land had been misrepresented to him by the owner Halliburton, and that the land was represented by complainant Halliburton to consist of about five hundred acres of cleared and cultivated land suited to the raising of cotton, and that he rented said lands without going on the lands and without an opportunity of ascertaining the number of acres susceptible to cultivation or the real quality of the land. He alleged in his answer that only about one hundred acres of the land could be planted to cotton, and that only about fifty acres of the one hundred acres was dry enough to be successfully cultivated in cotton, and that under his rent contract he was to pay so much per acre for the number of acres cleared and susceptible to cultivation; that because of the limited number of acres, and because the land was low and wet, he sustained considerable loss, as the result of the misrepresentations made to him with reference to same at the time he contracted to rent the same.

The defendant K. R. Armistead & Co., filed a separate answer, in which he states that he knew nothing of the contract made between Halliburton and defendant W. E. Elder with reference to the rental of the land, and states that he is advised and informed that defendant W. E. Elder did rent the tract of land described in the bill from the said J. H. Halliburton for the year 1923, and cultivated the same during that year. This defendant denies in the answer that complainant is entitled to have the proceeds realized from the sale of the fifteen bales of cotton attached and applied to his debt for rent, and denies that complainant had a lien on said cotton for rent at the time the same was sold by defendant in the City of Memphis. This defendant alleges in the answer that during the year 1923 defendant Elder arranged with defendant K. R. Armistead & Co. to furnish him supplies on which to make a crop on said land, and executed a chattel mortgage to this defendant

upon his live stock and on all the crops of cotton and other crops to be grown by him on said land in the year 1923, and that it was a part of the agreement that defendant Elder would deliver the cotton grown on said land to K. R. Armistead & Co. to be sold and the proceeds applied to the supply account; that in pursuance of said arrangement defendant K. R. Armistead & Co. did advance and supply for said year 1923 to W. E. Elder for the purpose of making said crop to the amount of $3,094.06; that in pursuance of said agreement defendant Elder delivered to K. R. Armistead & Co. in Memphis fourteen bales of cotton grown by him on said land, to be sold for his account and credited on said indebtedness to said defendant; that defendant K. R. Armistead and Co. sold said cotton and from the sale of same realized the sum of $2265.63, and was directed by the defendant Elder to apply said amount on the indebtedness of said K. R. Armistead & Co.; that said defendant K. R. Armistead & Co.; has received no other payment on his account against the defendant Elder, and has no other security for the said debt. The answer of this defendant also alleges that the landlord's lien of complainant for the rent of the land was lost when said cotton was delivered to defendant K. R. Armistead & Co. in Memphis; that K. R. Armistead & Co., by virtue of the chattel mortgage covering this cotton, was entitled to the proceeds from the sale of the cotton in Memphis to be applied to its said debt for money and supplies furnished.

At the hearing of the cause the Chancellor decreed a judgment in favor of complainant and against defendant W. E. Elder for the sum of $2600, and all of the costs of the cause except the cost incident to the suing out of the attachment, and dismissed the bill as to the defendant K. R. Armistead, trading under the name and style of K. R. Armistead and Company, and dismissed the attachment impounding the proceeds of the cotton. The Chancellor further decreed that the landlord's lien on the cotton grown on said land was lost to complainant when said cotton was brought out of the State of Arkansas, and delivered by defendant Elder to defendant K. R. Armistead & Company in the City of Memphis, Tennessee, to be applied on the indebtedness of defendant Elder to defendant K. R. Armistead & Co. for supplies used in raising said crop, and that defendant K. R. Armistead & Co. under their chattel mortgage had the superior claim to said funds.

From the decree of the Chancellor defendant W. E. Elder prayed an appeal, but which appeal was not perfected. From the decree and finding of the Chancellor denying the relief against K. R. Armistead & Co., and in dismissing the bill against K. R. Armistead & Co. and the attachment, the complainants appealed to this court, assigning errors, six in number. By the assignments of error only

two questions are presented. First, that the learned Chancellor erred in holding and decreeing that complainant had lost his landlord's lien by the removal of this cotton by defendant Elder, and delivering the same to K. R. Armistead & Co. in the City of Memphis. Second, that the Chancellor erred in holding and decreeing that because of the agreement of K. R. Armistead & Co. that the cotton should be shipped to Tennessee, made with knowledge that the cotton was raised on rented lands, for which the landlord had a lien, did not amount to such conversion of the cotton in Arkansas as would make the laws of that State applicable upon the removal of the property to Tennessee.

The record contains a finding of the facts by the Chancellor. The first four of the propositions of fact as found by the Chancellor need not now be considered, as they pertain to the issues presented by the answer of defendant Elder, and from which the defendant Elder has not perfected an appeal.

The facts as found by the Chancellor important to be considered for a determination of the questions at law presented by the assignments of error are contained in Items 5, 6 and 7. These are as follows:

"5. All the cotton raised on the place, to-wit: 15 bales, was delivered by W. E. Elder to the Memphis Terminal Corporation, in Memphis, for the account of K. R. Armistead & Co. This cotton was delivered by wagon. The first notice that Armistead & Co. had that the cotton had been delivered was when the warehouse receipts and samples were received from the Memphis Terminal Corporation. These receipts were received from October 1st to October 28th. Armistead & Company sold this cotton and received therefor the sum of $2266.63.

"6. K. R. Armistead & Company furnished W. E. Elder the supplies to enable him to raise a crop on said land, to this end a chattel mortgage was executed to Armistead & Co. by Paul M. Elder and W. B. Burrow, who were to operate the place under W. E. Elder, and under his supervision, on his livestock and on all crops of cotton and other crops to be grown by him on said land in the year 1923, and it was a part of said agreement and understanding but not incorporated in the chattel mortgage, that Elder would ship to K. R. Armistead all cotton grown by him on said land in the year 1923. Under this arrangement, Armistead and Company advanced W. E. Elder money, in the year 1923, to the amount of $3,094. The chattel mortgage was duly recorded in Crittenden county, Arkansas.

"7. K. R. Armistead & Co. had no representative in Arkansas at the time this cotton was delivered by Elder at the warehouse of the Memphis Terminal Corporation, and did noth-

ing to induce Elder to bring the cotton to Memphis, other than having the agreement that all cotton raised on the place should be shipped to them. Armistead & Co. knew that the cotton received was raised on rented land.''

The above facts as found by the Chancellor are well supported by the evidence, and we may add, there is no evidence to the contrary. In the excellent brief of appellant it is said: ''The sole question, therefore, before this court is the respective rights of a landlord who, under the laws of Arkansas, has a lien upon the crops raised for his rent, and the factor who has advanced money to make the crops upon said lands, securing himself by a recorded mortgage, when the cotton has been shipped from the State of Arkansas, and the proceeds are in the hands of the factor at the time of the suit, when it is conceded that the factor knew the crops were to be raised on rented land, and stipulated that they should be shipped to him.''

We are of the opinion that the landlord's lien statute of the State of Arkansas, and which is invoked by complainant on this appeal, does not have extra-territorial effect, and if the cotton in question was delivered to defendant K. R. Armistead & Co. in the State of Tennessee, the Arkansas landlord's lien created by the statute of that State is lost. However, it is contended for appellant that, in the event there was a conversion of the cotton in the State of Arkansas before the cotton was removed from the State of Arkansas and brought into this State, that complainant could recover the value of the cotton from the person so converting it as for a conversion. The original bill filed in this case does not allege that there was a conversion of the property by K. R. Armistead & Co. The bill proceeds solely upon the theory that complainant Halliburton was entitled to the proceeds from the sale of this cotton by virtue of the alleged landlord's lien existing in favor of complainant as a landlord, and makes the defendant K. R. Armistead, operating and trading under the name of K. R. Armistead & Co., garnishee defendant, and attaching by garnishment the proceeds from the sale of this cotton in the hands of said garnishee defendant. The original bill seeks a judgment against W. E. Elder for the amount of rent alleged to be due and owing to complainant, and seeks to have the proceeds realized from the sale of this cotton applied to said judgment by virtue of its alleged landlord's lien.

As above stated, the landlord's lien provided by the Arkansas statute does not have extra-territorial effect. We think this question is well-settled, even by the decisions of the Supreme Court in the State of Arkansas. (Sledge & Norfleet v. Hughes, 156 Ark., 481, 247 S. W., 1077).

In 16 R. C. L., p. 989, it is said:

"In accordance with the general rule that the statutes of a State have no extra-territorial effect, it is held that the statutory lien of a landlord does not follow the tenant's property when shipped out of the State whose statute confers the lien, and that one who purchases said crops outside of said State, though he had notice of the landlord's lien incurs no liability to the landlord."

In the two cases decided by the Supreme Court of Arkansas, by one opinion applicable to both cases of Sledge & Norfleet Co. v. Hughes and J. T. Fargason Co. v. Lovewell, supra, were suits brought by the respective landlords against the respective factors for the alleged conversion of cotton shipped by tenants to said respective factors in the City of Memphis. It was held in those cases that if the factors with knowledge of the landlord's lien received the cotton in the State of Arkansas they would be liable for the conversion of the same. It was held under the facts of those cases that the conversion of the cotton occurred in the State of Arkansas when the same was delivered to the carrier, on the theory that the carrier was the agent of the factor and received the cotton in the State of Arkansas. In the instant case the tenant delivered the cotton in Memphis by wagon to the Memphis Terminal Company, in Memphis, Tennessee, and the Memphis Terminal Company turned over the warehouse receipts for this cotton to K. R. Armistead & Company by direction of the tenant W. E. Elder. In no case that we have been referred to, and in no case reported, have we been able to find that the tenant in taking the property out of the State and delivering it to the factor himself was held to be the agent of the factor so as to constitute it a delivery to the factor in the State where the crops were grown or raised. In the Arkansas cases referred to it was not held that the tenant in delivering the cotton to the railroad company as carrier was acting as the agent of the factor, but it was held in those cases that a delivery by the tenant in the State of Arkansas to the carrier was a delivery to the factor and consigned to the factor, and that the carrier accepting the shipment for delivery to the factor became the agent of the factor, and hence the conversion occurred in the State of Arkansas.

Nor do we think that the mere agreement at the time the arrangements for the furnishing of money and supplies by the factor, that the tenant would deliver the cotton to the factor in Memphis, even with knowledge that the cotton was to be grown on rented land, in the absence of fraud or collusion intended to defeat the rights of the landlord, would alter the rule.

There is nothing in this record to support the contention made by appellants that this alleged agreement would have the legal effect of converting this property in the State of Arkansas. How-

ever, as above stated, the complainant does not sue the defendant K. R. Armistead for a conversion of the property. The bill is planted squarely on the alleged superior rights to the fund derived from the sale of the cotton by reason of the alleged landlord's lien. There is no allegation in the bill that there was a conversion of this cotton in the State of Arkansas by defendant K. R. Armistead, or K. R. Armistead & Co. The bill alleges the Arkansas Statutory Landlords Lien, and pleads this statute specifically and quotes the statute, and alleges that this cotton was grown on the land of complainant in the State of Arkansas, and was shipped to K. R. Armistead who had sold the cotton, and makes K. R. Armistead & Co. garnishee defendants, and attaches by garnishment the money in the hands of K. R. Armistead realized from the sale of the cotton. It is admitted that K. R. Armistead & Co. held a recorded chattel mortgage covering this cotton, which mortgage was given to secure the supply account.

We are of the opinion that there is no error in the decree of the Chancellor, and that under the facts and the law applicable thereto, the Chancellor reached the correct conclusion in holding and decreeing that K. R. Armistead & Co. is entitled to apply the proceeds from the sale of this cotton, under its chattel mortgage, to the debt against W. E. Elder secured by said chattel mortgage.

It results that all assignments of error are overruled, and the decree of the Chancellor is affirmed. The appellant and surety on the appeal bond will pay the cost of this appeal.

Heiskell and Owen, JJ., concur.